UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANDER FRANK KANE<br>Debtor/Appellant,<br>v.<br>FRED HJELMESET, TRUSTEE<br>Appellee. | Case No. 23-cv-05288-WHO<br><br>**ORDER AFFIRMING BANKRUPTCY COURT ORDER GRANTING MOTION FOR TURNOVER OF HOMESTEAD PROCEEDS**<br><br>Re: Dkt. No 7 |

Appellant Evander Frank Kane appeals a bankruptcy order by the Hon. Chief Judge Stephen L. Johnson granting appellee and trustee Fred Hjelmeset's (the "Trustee") motion for turnover of homestead proceeds. Kane received the proceeds as part of a homestead exemption that he claimed when filing for bankruptcy, but he failed to reinvest them as required by California law and Judge Johnson properly ordered him to turn them over to the Trustee. Nothing in the Bankruptcy Code preempts California's ability to implement reinvestment periods. The court did not clearly err in finding that Kane did not show that he is otherwise exempt from California's reinvestment period. And it did not abuse its discretion when it declined to find that the reinvestment period was equitably tolled. The bankruptcy court's order is AFFIRMED.

## BACKGROUND

Kane filed for Chapter 7 Bankruptcy on January 9, 2021. *See* Appellant's Excerpts of Record Documents ("ER") [Dkt. No. 8-1] at 1-6. At the time of the filing, he claimed a $600,000.00 homestead exemption for his residence in San Jose. *See id.* at 17. On May 4, 2021, creditor Zions Bancorporation objected to the claimed homestead exemption, asserting that it should be denied in full or that section 522(p) of the Bankruptcy Code—which limits exemptions in states like California that permit debtors only the exemptions allowable under state law—

applied in California and limited his exemption to California's statutorily-determined $170,350.00. *See* ER at 104, 109. On July 9, 2021, the bankruptcy court held, in relevant part, that section 522(p) did apply and limited the homestead exemption amount to $170,350.00. ER at 127.[1]

On September 23, 2021, Judge Johnson authorized the sale of Kane's San Jose residence and ordered payment from the proceeds of the sale for Kane's allotted exemption. ER at 158-60. Kane received $170,350.00 from the proceeds of the sale on or about October 6, 2021. ER at 163-65, 186. In March 2022, counsel for the Trustee informed Kane's counsel that the six-month reinvestment period, provided by Cal. Civ. Proc. Code § 704.720(b), would expire on April 5, 2022. ER at 187 ¶ 4. The parties agreed to table the homestead reinvestment issue until the appeal, *see supra* n. 1, was resolved. *Id.* Kane purchased a new residence in September 2022. ER at 203 ¶ 9.

In August 2023, the Trustee filed a motion to order Kane to turn over the proceeds from the sale. ER at 180-85. Subsequent to oral argument, Judge Johnson explained why he was granting the Trustee's motion, *see* ER 218-45 (Bankruptcy Court Ruling), and held that Kane must turn over the homestead exemption proceeds because he failed to reinvest the proceeds pursuant to section 704.720(b). ER at 215-16 (Bankruptcy Court Order). Kane then appealed.

**LEGAL STANDARD**

A district court has jurisdiction to hear appeals from a bankruptcy court's final judgments, orders, and decrees. 28 U.S.C. § 158(a)(1). On appeal, a bankruptcy court's conclusions of law are reviewed de novo and its findings of fact are reviewed for clear error. *Continental Cas. Co. v. Chatz*, 591 B.R. 396, 409-10 (N.D. Cal. 2018) (citations omitted). In reviewing the bankruptcy court's findings for clear error, "[t]his court must accept the bankruptcy court's findings of fact unless, upon review, the court is left with the definite and firm conviction that a mistake has been committed by the bankruptcy judge." *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009). For factual

---

[1] On July 23, 2021, Kane appealed the Homestead Order, *see* ER at 155-57, and I affirmed. *See Kane v. Zions Bancorporation, N.A.*, 631 F. Supp. 3d 854 (N.D. Cal. 2022). Kane appealed my decision to the Ninth Circuit, *see* ER at 173 ¶¶ 20-22, but later dismissed his appeal. ER at 179.

inferences based on the evidence, "[a] court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record." *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010) (citing *United States v. Hinkson*, 585 F.3d 1247, 1261-62 & n. 21 (9th Cir. 2009) (en banc) and *Anderson v. City of Bessemer City*, 470 U.S. 564, 577 (1985)).

## DISCUSSION

Kane argues that the bankruptcy court erred: (1) by applying the six-month reinvestment requirement in California Code of Civil Procedure section 704.720(b) even though it had previously applied section 522(p) of the Bankruptcy Code to restrict Kane's homestead exemption; (2) by finding that Kane's payment of rent and attorney fees did not constitute a reinvestment that reduced or eliminated the amount he had to turn over to the Trustee; and (3) by choosing not to equitably toll the six-month reinvestment period during the pendency of Kane's appeal of the bankruptcy court's order limiting his homestead exemption. I consider the bankruptcy court's first contested conclusion de novo and review the second and third conclusions for clear error and abuse of discretion, respectively.

### I.  SUMMARY OF THE BANKRUPTCY STATUTORY SCHEME

The filing of a bankruptcy petition creates an estate and includes any property in which the debtor had an interest at the time of filing. *See* 11 U.S.C. § 541. The Bankruptcy Code allows debtors to exclude property from their bankruptcy estates through exemptions. *See In re Jacobson*, 676 F.3d 1193, 1197-98 (9th Cir. 2012). It lists allowed exemptions, but states may opt out of these exemptions and provide their own. *See* 11 U.S.C. § 522(b)(2). California has opted out of the federal exemption scheme. *See* Cal. Civ. Proc. Code § 703.130.

California has two types of homestead exemptions, "declared" and "automatic." The declared homestead exemption applies when a debtor records a homestead declaration. *See* Cal. Civ. Proc. Code § 704.910(a). The automatic exemption applies against the forced judicial sale of a dwelling. *See id.* § 704.710. California's homestead exemption protects a homestead that is the "principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court

determination that the dwelling is a homestead." *Id.* § 704.710(c). This exemption prevents the judgment creditor from forcing a sale of the homestead unless there is sufficient equity to pay the debtor the amount of homestead exemption entitled to her. *See id.* §§ 704.720, 704.850(a)(1)-(4).

The purpose of the California homestead exemption is to protect the family home against a loss caused by a forced sale and to ensure that debtors and their families are not rendered homeless. *See In re Nolan*, 618 B.R. 860, 863-64 (C.D. Cal. 2020). The bankruptcy court determines the applicability of the California homestead exemption on the date the debtor files the bankruptcy petition. *Barclay v. Boskoski*, 52 F.4th 1172, 1176-78 (9th Cir. 2022). Section 522(p) of the Bankruptcy Code, quoted in relevant part below, may limit the amount of an exemption in a debtor's residence during the 1,215 days preceding the filing of a bankruptcy petition:

> Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $189,050 [originally "$125,000", adjusted effective April 1, 2022][2] in value in--
>
> (A) real or personal property that the debtor or a dependent of the debtor uses as a residence;
>
> (B) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;
>
> (C) a burial plot for the debtor or a dependent of the debtor; or
>
> (D) real or personal property that the debtor or dependent of the debtor claims as a homestead.

*See* 11 U.S.C.A. § 522(p). As I held previously, this federal cap applies to opt-out states like California. *See Kane v. Zions Bancorporation*, 631 F. Supp. at 865.

Section 704.720(b) provides the following relevant parameters for proceeds received from the sale of a homestead under California law:

---

[2] At the time of Kane's filing, the exemption limit was $170,350.00. *See* 11 U.S.C.A. § 104.

4

> …The proceeds are exempt for a period of six months after the time the proceeds are actually received by the judgment debtor, except that, if a homestead exemption is applied to other property of the judgment debtor or the judgment debtor's spouse during that period, the proceeds thereafter are not exempt.

Cal. Civ. Proc. Code § 704.720(b). A debtor's right to proceeds from the forced sale of a homestead property is, essentially, conditioned on reinvestment in a new homestead within six months of receipt of the proceeds. Failure to reinvest proceeds in a new homestead within this period leads to a forfeiture of the proceeds. *See In re Jacobson*, 676 F.3d 1193, 1198-99 (9th Cir. 2012).

## II. SECTION 522(P)-PREEMPTION

The first issue to address is whether the bankruptcy court erred in concluding that section 522(p) does not preempt California's six-month reinvestment requirement as established by section 704.720(b) of the California Code of Civil Procedure. I review this issue de novo. *See In re United Ins. Mgmt. Inc.*, 14 F.3d 1380, 1383 (9th Cir. 1994) (a bankruptcy court interpreting statutory law is an issue of law reviewed de novo).

As discussed above, a debtor can "exempt certain property from the bankruptcy proceedings and protect that property from creditors" under 11 U.S.C. § 522(b). *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009) (citing 11 U.S.C. § 522(b)). The same section outlines the types of property a debtor can claim as exempt. *See* 11 U.S.C. § 522(b), (d). It also includes an "opt-out provision whereby the state can either require the debtor to exempt property under the state law exemptions or grant the debtor the option of choosing between state exemptions and the section 522(d) exemptions." *Greene*, 583 F.3d at 618 (citing 11 U.S.C. § 522(b)(2)). California is an opt-out state that "permits its debtors only the exemptions allowable under state law." *In re Bhangoo*, 634 B.R. 80, 85 (B.A.P. 9th Cir. 2021) (citing Cal. Civ. Proc. Code § 703.130).

Kane argues that the bankruptcy court erred in concluding that California's reinvestment requirement applied to him even though a federal statutory cap—section 522(p)—had been used to cap his homestead exemption. *See* Appellant's Opening Brief ("Opening Brief") [Dkt. No. 7] at 15. He contends that the application of a federal statute as an exemption cap that does not have a

reinvestment requirement preempts California's reinvestment requirement. *Id*. at 14. I disagree.

California's reinvestment requirement applies to Kane's exempt proceeds. Under 11 U.S.C. § 522(b)(2), a debtor is required to comply with the state law at the time of the bankruptcy filing. The Ninth Circuit is clear that bankruptcy exemptions are fixed at the time of the filing of a bankruptcy petition. *See In re Jacobson*, 676 F.3d 1193, 1199 (9th Cir. 2012) ("[u]nder the so-called 'snapshot' rule, bankruptcy exemptions are fixed at the time of the bankruptcy petition") (citation omitted)).

The California reinvestment rule is neither impliedly nor expressly preempted by 11 U.S.C. § 522(p). Implied preemption occurs in one of two ways: (1) through implied "field" preemption, where federal law "so thoroughly occup[ies] a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it," *see Cipollone v. Liggett Group., Inc.*, 505 U.S. 504, 516 (1992), or (2) through implied "conflict" preemption, where there is an "actual conflict" between state and federal law, or where state law obstructs Congress's purpose in enacting the federal law, *see Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 698-99 (1984). There is no implied field preemption here because the federal law in question, section 522(p), does not comprehensively cover the subject at-issue, it only sets a cap on the homestead exemption set by California state law. Nor is there an actual conflict between the two laws because section 522(p) gives states flexibility in determining what their respective exemptions will be.

There is no express preemption for largely the same reasons: The California reinvestment rule is not clearly inconsistent with section 522(p), which gives the states flexibility in determining what their respective exemptions will be. "States have the authority to provide for limited exemptions or not to provide exemptions at all." *See In re Konoff*, 356 B.R. 201, 206 (B.A.P. 9th Cir. 2006) (citing *Owen v. Owen*, 500 U.S. 305, 308 (1991)). As the *Konoff* court observed, states have the authority "'to create whatever exemptions they elect,' even if they are less inclusive (or more restrictive) than the exemptions afforded debtors by the federal exemption scheme." *Konoff*, 356 B.R. at 206 (citing *Storer v. French (In re Storer),* 58 F.3d 1125, 1128 (6th Cir.1995) (quoting *Rhodes v. Stewart,* 705 F.2d 159, 163 (6th Cir. 1983)); *see also In re Golden,* 789 F.2d 698, 700

1   (9th Cir. 1986) (stating that federal courts have long recognized that state exemptions may be
2   more or less generous than federal exemptions and that state exemptions need not be identical or
3   comparable to federal exemptions).

4   To be sure, the Supreme Court has held that states do not have *total* freedom to place
5   unfettered restrictions on exemptions; if state exemptions conflict directly with the Bankruptcy
6   Code, then the preemption principles outlined above dictate that federal law prevail. *See Owen*,
7   500 U.S. at 309-13. But that is not the situation here. California's six-month reinvestment
8   requirement does not directly conflict with section 522(p). There is "nothing in the [Bankruptcy]
9   Code that prohibits a state from imposing a time limitation as a condition to maintaining the
10  exempt status of a certain property." *Konoff*, 356 B.R. at 207.

11  The Trustee points to several Ninth Circuit cases where state exemption laws were
12  followed so long as no conflict existed between the state and federal law. *See* Appellee's
13  Response at 7. For example, *In re Golden*, 789 F.2d 698 (9th Cir. 1986), is on point. There, the
14  Ninth Circuit considered whether a debtor who claimed a California homestead exemption was
15  required to reinvest the proceeds of the sale of the homestead within six months. *In re Golden*,
16  789 F.2d at 699. The court applied California law to determine whether the debtor could claim the
17  exemption. *Id*. at 700. Although the debtor in *Golden* argued that debtors who claim the
18  California homestead exemption retain the exemption so long as the bankruptcy petition is filed
19  within six months of the sale, the court made it clear that California law requires reinvestment to
20  ensure the debtor does not squander the proceeds. *Id*. Acceptance of an alternative position, the
21  court explained, would "frustrate the objective of the California homestead exemption and the
22  bankruptcy act itself[.]" *Id*.

23  Moreover, the Bankruptcy Code does not allow debtors to invoke one part of the California
24  homestead exemption and ignore others. *In re Jacobson*, 676 F.3d 1193 (9th Cir. 2012), is
25  instructive on this point. In *Jacobson*, the Ninth Circuit considered California state law to
26  determine if a debtor's homestead proceeds were subject to the reinvestment requirement. *In re*
27  *Jacobson*, 676 F.3d at 1199. The court was clear that its analysis included the "exact scope of the
28  rights" the California homestead exemption confers at the time the bankruptcy petition is filed. *Id*.

7

1  Because the exemption gives the debtor a defined right to the proceeds of the sale of the
2  homestead, the court held that right is contingent on reinvestment within six months of receipt. *Id*.
3  The Ninth Circuit refused to read out the reinvestment requirement from the exemption because
4  the Bankruptcy Code does not allow debtors to invoke one part of the exemption and ignore
5  others. *Id*. at 1200. Yet that is precisely what Kane seeks to do. There is no dispute that Kane
6  claimed a homestead exemption pursuant to California law. ER at 017. Because of this, all
7  California exemption law applies, including any contingent rights.

8  Additionally, this court has already held that the section 522(p) statutory cap applies to
9  California. *See Kane v. Zions Bancorporation, N.A.*, 631 F. Supp. at 865 (holding that the
10 statutory cap set forth in section 522(p) applies to opt-out states such as California). Congress's
11 intent to close loopholes that allow debtors to shield homesteads from creditor reach was central to
12 my analysis of section 522(p) in that case. *Id*. California's objective and Congress's objective do
13 not conflict. Ensuring that debtors reinvest proceeds in another homestead within a certain period
14 subject to creditor reach is compatible with the intent of both legislative bodies. Interpreting the
15 applicability of the reinvestment requirement otherwise would be inconsistent with Ninth Circuit
16 precedent and California law.

17 Kane insists that California's reinvestment provision is incompatible with the section
18 522(p) exemption cap. *See* Opening Brief at 14. But the cases upon which he relies for this
19 argument are distinguishable from his own. First, Kane cites *Barclay v. Boskoski*, 52 F. 4th 1172
20 (9th Cir. 2022), for the proposition that the Ninth Circuit has modified the rigidity with which
21 state law is applied to exemptions and that state exemptions are not absolute. Opening Brief. at
22 15. *Barclay* considered whether a judgment lien impairs a debtor's California homestead
23 exemption, a dispute that is not at issue here. *See Barclay*, 52 F. 4th at 1175. The question
24 concerned section 522(f) of the Bankruptcy Code, which allows a mechanism for a debtor to avoid
25 a judgment lien. *Id.* at 1176. Although the Ninth Circuit departed from *Jacobson* in *Barclay,* it
26 did so because "[n]othing in [the *Jacobson*] case concerned the lien avoidance procedure at issue
27 here." *Id.* at 1178. In contrast, as discussed above, *Jacobson* is on point with Kane's case.
28 Kane's other authorities are also not persuasive. He relies on *In re Davis*, 647 B.R. 775

8

(Bankr. W.D. Wash. 2022), and *In re Reicher*, No. CV-22-2050, 2023 WL 4291065, at *1 (C.D. Cal. Apr. 4, 2023), cases where joint debtors whose exemptions were capped by section 522(p) doubled their exemption proceeds amounts despite state law prohibiting them from doing so. *See* Opening Brief at 15. *Davis* and *Reicher,* while addressing the applicability of state exemption law after proceeds were capped by section 522(p), are distinguishable from this case in two ways. First, both involved exemptions claimed by joint debtors. Kane, and no additional debtor, filed a bankruptcy petition claiming the homestead exemption. *See* ER at 017. Second, and more importantly, the bankruptcy courts in *Davis* and *Reicher* applied an additional federal exemption provision—section 522(m)—to analyze whether joint debtors could double their exemption. The *Davis* court found that section 522(m) permits each debtor to claim the capped state exemption, effectively allowing the doubling of the exemption provided for by state law. *In re Davis*, 647 B.R. at 779. The *Reicher* court relied heavily on the *Davis* decision to reach the same conclusion on the same issue. *In re Reicher*, 2023 WL 4291065, at *7.

Section 522(m) is not at issue here, and *Davis* and *Reicher* do not support Kane's argument that a federal cap on exempt proceeds dictates preemption or that a lack of a reinvestment requirement in section 522 means a state's reinvestment requirement becomes inapplicable. Indeed, the *Reicher* court reasoned that section 522(p) acts as a limitation that does not provide a basis to claim an exemption that exceeds what is provided for under state law. *See In re Reicher*, 2023 WL 4291065, at *3**.** This view is in line with the Bankruptcy Appellate Panel's reading of section 522(p) as expressed in *In re Caldwell*, 545 B.R. 605 (B.A.P. 9th Cir. 2016), where the B.A.P. held that section 522(p)(1) is a limitation on the homestead exemption regardless of the applicable state law exemptions. *See In re Caldwell*, 545 B.R. at 609. Consequently, the federal cap placed on a homestead exemption was not material to the outcome in *Davis* or *Reicher;* it was section 522(m), which expressly allowed each individual debtor to claim the exemption, that was material. Because section 522(p) acts as a limitation rather than an exemption that debtors can claim and no federal limitation on reinvestment requirements exists, state law exemption provisions are applicable.

Although Kane insists that there is conflict between section 522(p) and the California

9

reinvestment requirement, it is not impossible to comply with both provisions. There is nothing in the Bankruptcy Code that conflicts with California's reinvestment requirement, and the objectives of Congress and the California legislature are in harmony; therefore, California's reinvestment requirement must be applied. The bankruptcy court did not err in concluding that the California reinvestment requirement applies even where exempt proceeds were capped by section 522(p).

### III.    WHETHER REINVESTMENT REQUIREMENTS WERE SATISFIED

Kane also argues that the bankruptcy court erred in finding that his payments for rental properties and attorney fees did not constitute proper use of exempt proceeds to satisfy California's reinvestment requirement. A bankruptcy court's findings of fact on whether proceeds are subject to turn over are reviewed for clear error. *See In re Jacobson*, 676 F.3d at 1198. Factual findings are clearly erroneous if they are "illogical, implausible, or without support in the record." *In re Elliot*, 523 B.R. 188, 192 (B.A.P. 9th Cir. 2014) (citation omitted). Judge Johnson did not clearly err in his interpretation of the facts before him.

#### A.    Rental Payments

Kane claims that the use of the homestead proceeds to rent three rental properties satisfies California's six-month reinvestment requirement and that the bankruptcy court erred in holding otherwise. *See* Opening Brief at 17-30. His argument finds little support in the caselaw; his situation differs from those where rental payments have been sufficient to satisfy the reinvestment requirement of the homestead exception. Kane provides no facts from which the bankruptcy court could have inferred the properties that he rented might have been subject to an enforcement action by the judgment lien creditor.

As discussed, California's homestead exemption requires debtors to reinvest homestead sale proceeds in a new homestead within six months of receipt. Cal. Civ. Proc. Code § 704.720(b). Under California law, the party claiming the automatic homestead exemption has the burden of proof to establish that he is entitled to an exemption. *See In re Diaz*, 547 B.R. 329, 337 (B.A.P. 9th Cir. 2016). Kane did not record a declaration of a homestead; therefore, the automatic homestead exemption is applicable, and he has the burden to prove entitlement to that exemption. And while interests protected under the automatic homestead exemption are broader than those

1   protected under the declared homestead exemption, its coverage is not without limit.  As explained
2   in *In re Nolan*, 618 B.R. 860, 865 (C.D. Cal. 2020), "the type of interest upon which a homestead
3   exemption can be asserted, must be an 'interest sought to be reached by the judgment creditor in
4   the homestead.'" *See* Cal. Civ. Proc. Code § 704.720.  Kane has not shown that he had this kind of
5   interest in the properties he rented.

6   Kane cites cases where the debtors provided far more evidence to the bankruptcy court
7   regarding reinvestment of proceeds than what he provided to Judge Johnson.  He relies heavily on
8   *In re Sain*, 584 B.R. 325 (S.D. Cal. 2018), to argue that he met reinvestment requirements.  But his
9   use of the proceeds is distinguishable from the debtor in *Sain* in several ways.  The *Sain* court
10  considered other reinvestment interests besides rental payments, like deposits that the debtor made
11  into escrow for the purchase of the same homestead for which he claimed an exemption.  *Id*. at
12  331.  Here, Kane asserts that he invested at least $174,500.00 of the homestead proceeds in
13  housing by making rental payments, but unlike the debtor in *Sain,* he did so in several different
14  rentals rather than the same homestead.  Also unlike the debtor in *Sain*, he shows no evidence that
15  he paid property taxes on those homes or made deposits into escrow.

16  The court in *Sain* also made clear that the debtor's case was unique because it involved a
17  lease and the debtor's repurchase of the home from the trustee.  *Id*. at 327.  To make its
18  determination of whether proceeds were subject to turnover, the court in *Sain* reviewed the lease
19  and determined that it provided the debtor with the option to purchase the home and charged him
20  with payment of homeowner's association fees, homeowner's insurance, landscaping costs, and
21  property taxes.  *Id*. at 327-28.  Here, as the bankruptcy court observed, Kane provided only a
22  declaration stating that he paid rent on three rental properties and paid for a security deposit.
23  Judge Johnson found that this was insufficient to conclude that Kane had a sufficient interest that
24  judgment creditors might have reached.  *See* ER at 234.  That determination was reasonable.

25  Finally, there was no dispute in *Sain* that the debtor had an ownership interest and at all
26  times resided in the same home he repurchased.  *See In re Sain*, 584 B.R. at 330.  Rental payments
27  satisfied the reinvestment requirement because the trustee did not allow the debtor to credit bid the
28  homestead proceeds to repurchase his home, forcing the debtor's father to take title to facilitate the

11

1  loan for the purchase. *Id*. at 333. Here, Kane did not purchase a home within the reinvestment
2  period, nor did he remain in the same residence throughout that period. Instead, as I mentioned
3  above, Kane claims that he used the proceeds to pay for multiple short-term rentals. *See* Opening
4  Brief at 24. *Sain* does not support that making rental payments in multiple short-term rentals
5  during the reinvestment period constitutes proper reinvestment.

6  *In re Casserino*, 379 F.3d 1069 (9th Cir. 2004) is also distinguishable. The *Casserino*
7  court considered whether a debtor's security deposit and prepaid rent constituted reinvestment
8  under Oregon law. *In re Casserino*, 379 F.3d at 1074. To guide its analysis, the court considered
9  decisions from other jurisdictions and determined that a security deposit and lease are not
10 severable because the debtor is only entitled to take possession of the property after payments for
11 the security deposit and prepaid rent have been made. *Id*. The *Casserino* court reviewed the
12 debtor's lease, which detailed how the prepaid rent could be allocated under Oregon law. *Id.*
13 Here, Kane, as the bankruptcy court pointed out, did not provide a lease that allows the court to
14 understand the lease conditions for the three rental properties and whether they would qualify as
15 homesteads under California law.

16 Kane insists that the bankruptcy court erred in finding that his use of proceeds to pay rent
17 did not satisfy the reinvestment requirement because it incorrectly interpreted the exemption as
18 requiring the purchase of a new residence to meet the requirement. Opening Brief at 17.
19 California Code of Civil Procedure section 704.710(c) does not require that a debtor continuously
20 own a property to meet the reinvestment requirement. *Id*. at 17-18. And the automatic homestead
21 exemption does not specify which interests are covered under the exemption and does not limit
22 leasehold interests. *See id*. at 19-20 (citing California Code of Civil Procedure § 704.820, a
23 Legislative Committee comment to the automatic homestead exemption statute, and *In re Nolan*,
24 618 B.R. 860, 867-68 (C.D. Cal. 2020), for the assertion that the automatic homestead exemption
25 does not address which interests are covered under the exemption nor is there a limitation on
26 leasehold interests).

27 But the facts of Kane's situation do not mirror those where the courts have found that
28 unorthodox reinvestments meet the California requirement. In *Nolan*, for example, the court

1  recognized that the debtor held a beneficiary interest in a trust for which the California legislature

2  has specifically extended protection to beneficiary interests if it is subject to an enforcement lien.

3  *In re Nolan*, 618 B.R. at 867-68. Kane does not claim a beneficiary interest in the rental

4  properties, nor could the bankruptcy court determine from the record the type of interest Kane

5  holds in the rental properties and whether it was subject to an enforcement lien. *See* Bankruptcy

6  Court Order at 233.

7  Kane points out that the Ninth Circuit held in *In re Gilman*, 887 F.3d 956 (9th Cir. 2018),

8  that a debtor does not necessarily need to hold title to property to claim a homestead exemption for

9  that property; courts consider whether a debtor has continuously resided in a dwelling when

10  determining whether they have met the reinvestment requirement. Opening Brief at 20. The

11  bankruptcy court noted as much. *See* ER at 231-32. But in *In re Gilman* the debtor claimed a

12  homestead exemption for a home that the debtor was voluntarily selling at the time of the filing of

13  the Chapter 7 petition. *In re Gilman*, 887 F. 3d at 960. And although "the record was replete with

14  evidence the [d]ebtor was a continuous resident of the property in question," the panel vacated and

15  remanded the decision that granted the debtor the exemption because the bankruptcy court failed

16  to make a finding with respect to the debtor's *intent* to reside in the property. *Id*. at 965-66.

17  Here, there is no dispute about Kane's continuous residence and intent to reside in the San

18  Jose residence for which he claimed and received $170,350.00 in homestead exemption proceeds.

19  But the bankruptcy court did not make a finding as to the reinvestment of proceeds in the three

20  other rental properties because Kane did not provide sufficient evidence that would allow the court

21  to properly analyze the interest he held in those properties. *See* ER at 233.[3] The record consisted

22  of Kane's declaration and brief that state that he made rental payments for three rental properties

23  between September 2021 and July 2022**.** ER at 197 ¶¶ 12-15; ER at 203 ¶¶ 6, 8-9. Kane

24  supplemented that record in this appeal with a table demonstrating the same information that the

25  bankruptcy court acknowledged in its oral ruling. Opening Brief at 24. But there is nothing in the

---

[3] *Tarlesson v. Broadway Foreclosure Invs., LLC*, 184 Cal. App. 4th 931, 936 (2010), which Kane also cites in support, is similarly distinguishable because that case did not address the sufficiency of evidence for reinvestment of proceeds in rental properties which is an issue here.

United States District Court
Northern District of California

record that demonstrates that Kane had the kind of legal interest in these properties that he rented that he could have been subject to an enforcement action by a lien creditor; that is the standard he had to meet, *see In re Nolan*, 618 B.R. 860, and he has not met it. The facts of his case are not analogous to those where courts have slightly extended the coverage of the homestead exemption to make room for novel reinvestments. *See supra.*

Having been provided the same information as Judge Johnson with respect to rental payments, I cannot conclude that the bankruptcy court erred when it determined there was insufficient information in the record to find that Kane's rental payments met the reinvestment requirement.

### B.     Attorney Fees

The bankruptcy court also did not err when it determined that Kane's payment of attorney fees did not meet reinvestment requirements. *In re Sain* is once again instructive. There, the court determined that the debtor's use of proceeds to pay for attorney fees defending his homestead was proper reinvestment. *In re Sain*, 584 B.R. at 333. The court noted that the debtor did not have to acquire a new home and that no statute prohibits a debtor from buying his home back from the trustee. *Id*. at 332. The debtor used the proceeds to pay counsel to assist in buying his own home back. *Id*. at 333. Although Kane claims he used proceeds to defend his homestead rights, he offers no evidence demonstrating that the payment of attorney fees was used to defend homestead rights in connection with the purchase of a property. Kane offers no evidence that a judgment creditor would be able to reach the $30,000.00 that he paid in attorney fees by attaching a creditor's lien to it.

In short, the bankruptcy court did not err in finding that Kane's use of proceeds on attorney fees was not proper reinvestment.

### IV.     EQUITABLE TOLLING

Finally, Kane argues that the bankruptcy court abused its discretion by not equitably tolling the six-month reinvestment period. Opening Brief at 30. I disagree. Equitable tolling is reviewed for abuse of discretion. *In re Milby*, 545 B.R. 613, 619 (B.A.P. 9th Cir. 2016). A bankruptcy court abuses its discretion when it "bases its decision on an erroneous legal standard or

14

1  on clearly erroneous findings of fact." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012)
2  (citation omitted). California's six-month reinvestment requirement is subject to equitable tolling,
3  *see In re Dudley*, 617 B.R. 149, 154-55 (Bankr. E.D. Cal. 2020), but "[e]quitable tolling is a rare
4  remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of
5  affairs[,]" *In re Marriott*, 427 B.R. 887, 895 (Bankr. D. Idaho 2010) (citing *Wallace v. Kato*, 549
6  U.S. 384, 396 (2007)).

7  Kane makes two arguments on this question. First, he contends that the bankruptcy court
8  identified an incorrect legal rule when it claimed that he did not cite any authority showing that an
9  extension of the six-month reinvestment period is allowed. Opening Brief at 30. Second, he
10 asserts that even if the bankruptcy court identified the correct legal rule, it erred by interpreting the
11 law in an illogical manner. *Id*. at 31. I disagree on both fronts. The bankruptcy court did not err
12 on the law or the facts; Kane's circumstances distinguish him from the debtors in cases where
13 courts have correctly chosen to equitably toll the reinvestment period.

14 While Kane is correct that California courts have equitably tolled reinvestment periods,
15 they have not done so in situations that mirror his own. Courts have chosen to equitably toll the
16 reinvestment period when claimants lack possession or control of the homestead proceeds
17 following the sale of their homestead. *See e.g.*, *In re Dudley*, 617 B.R. at 154 (citing *Chase v.
18 Bank of America, Nat. Trust & Sav. Ass'n*, 227 Cal. App. 2d 259 (1964)); *Thorsby v. Babcock*, 36
19 Cal. 2d 202 (1950); *In re Marriott*, 427 B.R. 887 (Bankr. D. Idaho 2010); *In re Bading*, 376 B.R.
20 143 (Bankr. W.D. Tex. 2007). As Judge Johnson observed, *see* ER 235-36, it does not appear
21 from the record that Kane similarly lacked possession or control over his homestead proceeds.

22 In *In re Dudley*, the bankruptcy court equitably tolled the reinvestment period during the
23 coronavirus pandemic in a situation where the exemption claimant, through no fault of his own,
24 lacked control of or possession over the homestead proceeds and, as a result, could not reinvest
25 them. *See* ER at 235 (citing *In re Dudley*, 617 B.R. at 156). Kane's situation is not analogous.
26 As the bankruptcy court noted, Kane had complete control over the $170,350.00 homestead
27 proceeds as of October 6, 2021, and never sought to equitably toll those until long after the six-
28 month reinvestment period had passed. This also distinguishes his case from *In re Marriott*,

15

where the debtor never had control of the proceeds from his homestead sale because they were deposited directly into the debtor's trust account and never released. *In re Marriott*, 427 B.R. at 894-95. Unlike the debtor in *Marriott*, Kane was free to use the proceeds to reinvest in a new homestead immediately upon receiving the proceeds. *In re Bading* differs for the same reason: There, the debtor was precluded from "making a complete disposition of her homestead" which did not provide her an opportunity to timely reinvest. *In re Bading*, 376 B.R. at 145-46. In Kane's situation, the homestead proceeds were disbursed immediately, and he received the full amount of proceeds available to him under the exemption. ER at 165.

The bankruptcy court correctly distinguished Kane's case from these cases, ultimately concluding that they were "inapposite" because Kane had "complete control over the $170,350.00 homestead proceeds…" and he "never sought to stay or file the motion to equitably toll…until the [reinvestment] period had long passed." ER at 235. The record supports the bankruptcy court's conclusions. It is undisputed that Kane received the homestead proceeds in October 2021. ER at 163-65, 186. Kane's receipt of the proceeds, which were available for reinvestment immediately upon receipt, does not compare to the unusual circumstances the *Dudley* or *Marriott* debtors faced.

Finally, although Kane contends that his appeal of the Homestead Order restricted his receipt and control of the $600,000.00 claimed exemption, the bankruptcy court correctly pointed out that it was the application of the federal cap that restricted the proceeds, not the appeal. Opening Brief at 31; ER at 235. Kane asserts that acceptance of the bankruptcy court's conclusion that he had unrestricted access to the homestead proceeds subject to reinvestment would have required him to purchase two homes if he had succeeded on appeal. Opening Brief at 33. This is unpersuasive because Kane's own authority acknowledges that California law does not require title to a residence for it to be considered a homestead, nor does reinvestment require the purchase of a home. *See* Opening Brief at 19-24; *In re Gilman*, 887 F.3d 956 (9th Cir. 2018); *In re Sain*, 584 B.R. 325 (S.D. Cal. 2018).

Because the bankruptcy court applied the correct law and did not apply the law in an illogical manner, the bankruptcy court did not abuse its discretion when it determined that equitable tolling was inapplicable.

**CONCLUSION**

The bankruptcy court did not err in ordering Kane to turn over proceeds from the sale of his home for failure to comply with California's reinvestment requirement. The bankruptcy court's order is AFFIRMED.

**IT IS SO ORDERED.**

Dated: August 9, 2024



William H. Orrick
United States District Judge

17